The next case for argument is Torres-Navarro v. Whitaker. That's number 16-73040. Your Honor, my name is Jonathan Coffin. I represent the petitioner Casey Torres-Navarro. This case is similar than the case we just had. It also involves a person who was detained at the border by the Border Patrol. It involves a motion to suppress. In this case, the document that the petitioner seeks to suppress is the Form I-213, the document which is missing from the other case. The petitioner ---- Robertson In this case, as Judge Berzon mentioned a moment ago, you do challenge the arrest. Coffin That's correct. Robertson You argue that there was no probable cause? Coffin The respondent argues that there was no probable cause to arrest her, that the I-213 didn't even make out the basic components. And the information that the petitioner provided, the immigration judge, demonstrated that there was no determination of alienation that preceded the arrest. Kagan There's a burden question. Whose burden is it to demonstrate that there was no probable cause? Coffin The burden is on the petitioner to prove that there was an egregious violation of her Fourth Amendment rights. Kagan All right. So she ---- but she hasn't said anything very specific about what happened other than what's in the I-213, has she? Coffin She ---- Kagan You said they didn't ask me my name or where I was from. Did she say they didn't take her documents or the ---- Coffin She said that they didn't receive any documents from her until after she was arrested and incarcerated in the Border Patrol Station. Kagan It doesn't say where she was or what she was doing there. She says she was walking in the Rio Grande Valley. It doesn't say where. Coffin That's correct. The petitioner has never maintained that there wasn't a reason to detain her if there was a suspicion that she was an alien and she was illegal in the United States. The law is clear that the Border Patrol has that authority to detain, to investigate what this person is doing near the border.  Kagan So they have to be clear, or they have to have some facts. I mean, if I'm walking on a street in the Rio Grande Valley, they can't just stop me. Coffin I think that if they have a reason ---- I think that they can stop a person if they have a reasonable suspicion that the person is an alien who's illegal in the United States. If there's been an illegal act that's occurring, they have the authority to do that. Kagan All right, if they have ---- but there's nothing in this record to show that either. I mean, there's stuff in the brief about they saw her coming on a raft across the river into the country, but that's not anywhere in the record of the case. Is that right? Coffin That's right. Roberts What about at AR-135? At the top. It says that the I-213 says that on March 26, 2014, at 745, she entered at, it looks like, Hidalgo PWAM by raft. Coffin Well, there is no information that this was information that the petitioner provided them. They don't explain at all where this information came from. And ---- Roberts Sure it does. Look at the narrative. Second sentence. A border patrol agent determined this subject had unlawfully entered the United States from Mexico. And what the ---- that's at AR-136. And then AR-135 tells us what she actually told the border agent, which is she had arrived from Mexico by raft. Coffin The petitioner has maintained, Your Honor, that this I-213 is not a reliable record and that the description of her arrest ---- Roberts You're shifting gears. You're saying that the I-213 doesn't establish what the petitioner told the agent. And it says it right here in plain English. Now, the agent doesn't connect the dots, but the agent doesn't have to connect the dots. In the narrative, the agent said, I determined the subject had unlawfully entered the United States from Mexico. And then on the previous page, he explains how, by raft. Coffin The petitioner has ---- Roberts So isn't the agent saying the petitioner told me that she had entered the United States from Mexico by raft? Coffin I don't know that that's how they determined that at all. She didn't admit that at all at any point. And the ---- Roberts But she never said in her declaration that she didn't tell the agent that she had entered the United States from Mexico by raft. Right? Coffin No, she did not. She did not deny that specific allegation. But, Your Honor, the issue presented was whether or not this I-213 and this description that you're focusing on is a credible record of her arrest. The petitioner has contended that this arrest description and the description of her immigration processing when she was in the Border Patrol station was just boilerplate language. It was language that the Border Patrol has used over and over again in dozens and dozens of other I-213s. So this is not a description of her encounter and her arrest by a Border Patrol agent. Roberts But she didn't ---- she had the ---- when she did the declaration, she had the I-213, right? Coffin Yes. Roberts So in the declaration she said, I wasn't asked my name, I wasn't asked my origin, I wasn't asked my citizenship. But she never said, I wasn't asked how I got here. And I never said that I got here by raft from Mexico. Coffin No, she did not deny the allegation in the I-213 that she had illegally entered the United States. Roberts Then how can we then how can you argue that there was not just a violation of the Fourth Amendment but an egregious violation of the Fourth Amendment? Coffin Because the I-213 alleged that she was arrested because the Border Patrol agent had determined that she was an alien who illegally entered the United States. And she denied the allegation that alienage was determined. And the I-213 was submitted for the specific purpose of proving alienage at the removal hearing. And that's what she was contesting. Roberts Can't the agent infer from an arrival by raft from Mexico across the Rio Grande River that the person's an alien? Coffin An agent could do that, but that's not what the I-213 says. The I-213 says that a determination was made but doesn't specify on what basis that determination was made. It doesn't say that I determined that she was an alien because she arrived on a raft. It describes, it alleges at the Fourth Amendment. Roberts I'll grant you that. It doesn't connect the dots. But look, it's a two-page document. And the only inference you can draw from the narrative part saying I determined that she was an alien is because she had arrived from Mexico by raft. Coffin But none of these are none of this information and none of these arguments were made by DHS at the removal hearing. Just like in the prior case, a motion to suppress was filed and DHS did not answer. When an appeal was filed to the BIA, DHS did not answer. When the silence was noted to the BIA and it was argued that they should enforce their practice manual and deem the presumption of regularity rebutted, DHS didn't answer. DHS was the party in that room that had the burden of proof. It just ignored this case. It submitted an I-213 and it walked away. There should be a consequence for that. And the BIA abused its discretion and deprived the Petitioner of her fundamental right to the reasonable exercise of the BIA's discretion when the BIA didn't enforce its practice manual and didn't met out a consequence to DHS for what it did. Can you tell me, I'm sure it's there because you say it's there and Judge Feineman says it's there, but where is the statement that she came by raft? Her statement? A statement, the statement that she came by raft. On the 213. It's ‑‑ I'll take that one. It's four lines down on A135, the first page of the I-213. A135. Oh, I see. I got it. Thank you. Well, Your Honor, if there's information that's not accurate in the I-213, for example, the dates of these documents, the ‑‑ according to this narrative, the Petitioner was read the information on the I-867, advised of her rights. She indicated she understood. She said she was willing to make a statement. That narrative was prepared two days before the interview took place. It was impossible for that officer to know what was going to happen two days in the future. I think that that reason alone casts significant doubt on the reliability of this I-213, and not only on the reliability of whether or not she understood an I-867, whether she was willing to make a statement, but it also casts doubt on this allegation about how the Border Patrol officer determined she had illegally entered the United States. I think the onus was that once the presumption of regularity was rebutted, I think it ‑‑ Why doesn't the March 26th refer to when they found her? Excuse me? Doesn't the March ‑‑ the March 26th date refer to when they found her? The date 3-26-21 ‑‑ you're assuming that it means the date they wrote this document, but how do we know that? They found her on March ‑‑ she was arrested on March 26th. I know, but what makes you say that the 213 suggests that this document was written on March 26th? The dates on the top of ‑‑ at 136 of the record, 137. Well, right, but you're assuming that that means when they wrote it rather than when they found her. Well, they wrote the dates on the documents, and on the I-867 ‑‑ I know, but when they explain, the one piece of paper that does specifically say when the document was prepared, it says March 28th, at the report, if any of you, at the bottom of page 135. Yes, the I-213 was signed on March 28th. That seems weak. Let's say that's weak. Go ahead. Keep going. Well, Your Honor, the I-867, which the DHS did not present at the hearing, and which the petition refused to sign, is dated March 28th. It's dated two days after this document was ‑‑ the narrative was prepared. Okay. You're over your time. Let's hear from the government. Thank you, and may it please the Court again, David Butler for the Attorney General. Judge Freiman, you really hit the nail on the head on this case. I mean, again, we're in the expedited removal context. Again, we're ‑‑ yeah, you've got CBP apprehending an alien within, here, it's 25 minutes after entry on the raft. The raft notation says 745. How do we know that? Excuse me. How do we know that? That same document, Your Honor, where the raft appears, there's a time below it. It says 745, and then the apprehension time is 810 on the other side. One's on the left side of the document. Okay. So we're talking about a 25‑minute, you know, Border Patrol comes out, they interdict the alien. Again, no warrant required for the apprehension. Again, the standard is not probable cause to arrest. It's merely the reasonability standard, which is, can consider the totality of the circumstances. This is here. She just crossed on a raft across the Rio Grande. Pretty good indication that she's entering illegally. She is then transported to the Border Patrol station, where she does not make a claim to any kind of fear, unlike in the other case. And so we see the first prong being fully played out in the expedited removal process here. And that's the ‑‑ this is documented in the I-213, as well as the I-867A, which Petitioner actually put into the record and redacted the content. The alien didn't ‑‑ Petitioner didn't sign the document. But here we see ‑‑ But, Boyd, she says that before she was arrested, i.e., locked me in the room, they forcibly transported me to a patrol office. They arrested me forcibly. I see. You're saying they didn't really arrest her when they seized her and took her to the Border Patrol officer and that wasn't arresting her? Oh, no. That's under arrest. And that's the warrantless arrest that's authorized under INA 287A2. And they don't need probable cause for that? They just need reasonable suspicion? No. Reasonable suspicion, Your Honor. And that's ‑‑ the Supreme Court found that in Rignani Ponce, which is 422 U.S., and it's at 881. But that's to stop society. But now they're arresting her. Yeah. No. That's the reasonable suspicion in order to take her into custody. Under ER, you have the reasonable suspicion. You execute the warrantless arrest. You take the alien back. You have the interview. And that interview, that process of that interview, is well documented at INA 235B1A Romanet I, or 1. And that's the process that you see in the documents playing out in the I‑867A. And that's at page 96 of the record. The interview was undertaken to determine whether she is, in fact, removable and whether she has a ‑‑ asserts a credible fear or any fear of return. I think Judge Berzon's question was, in order to arrest in this situation, do you need only reasonable suspicion or do you need probable cause? I believe the warrantless ‑‑ in order to stop her, you would need the reasonable suspicion. That's not my question. Reasonable suspicion. Arrest. I believe the warrantless arrest, under the statute, it says may arrest any alien in the U.S. if he has reason to believe that the alien is in the U.S. in violation of any law or regulation and is likely to escape before a warrant can be obtained for his arrest. Does that mean reasonable suspicion or probable cause? It would be reason to believe, which I believe is ‑‑ I would assert I believe it's lower than probable cause. But it's at INA 287A2. So ‑‑ But, Rick, Noni Ponce and Almey Sanchez in that whole lot of cases has nothing to do with this. They have to do with stopping people involving patrols or roadblocks or whatever to make inquiry. They don't have anything to do with arresting people. Sure. And here they have an encounter with her. Based on the totality of the circumstances that they look at, the proximity, she just entered on a raft, the proximity to the border, clearly, I mean, whether it's probable cause, reasonable cause, it clearly exists here. And there's no allegation whatsoever in that declaration that it didn't exist. They're not controverting any of that. They're not saying ‑‑ If they don't know who she is or whether she or, according to her at that point, they don't know who she is, where she came from or whether she ‑‑ They knew where she came from. It was from Mexico on a raft. Well, where she's a national or whether she has any right to be in the U.S. They don't ask her any of those things before they arrest her. Now, could I take a raft across the river? I don't know. Maybe I can't because I have to go to a border stop. Is anybody who takes a raft across the river therefore ‑‑ Yes, Your Honor. You're entering without inspection by an immigration officer. That entry is in itself illegal. Well, I understand. So now they're inspecting her. But they don't ask her anything before they arrest her, she says. Well, we have the information that's in the 213 regarding, they say, we ascertain the fact that she is illegal, which is imminently inferable from the fact that she just paddled across the river on a raft and was apprehended 25 minutes later by Border Patrol when there's a Border Patrol station a short distance away where she could have lawfully entered if she was entitled to lawfully enter the United States. So, yeah, under no circumstances would that in any way not give someone probable cause. I know. I was down in that river last year and there were people on rafts. So, I don't know. Anyway, go ahead. I mean, it's in the document. The document's entitled to a presumption of reliability. It's clearly stated there. It's unclear. She didn't say, no, I wasn't on a raft. She hasn't said that at all. She had the opportunity to file this declaration. All she alleges is, oh, I didn't give them my name or conceive my alienage at the time. And, you know, to have a rule where you just submit an unsworn affidavit, a declaration, which is all that's present here, where you say, well, geez, the Border Patrol didn't ask me if I was an alien and I stood there silently after they just watched me illegally enter our country. You say, well, geez, that's an egregious constitutional violation. That strikes me as a bit absurd. And everything that followed is absolutely by the book. She's transported lawfully with a warrantless arrest. She has her interview two days later where, through the expedited removal process, she goes through the I-867A interview in Spanish. The advisals are clearly there. It indicates that it was read to her. And she refused to sign that. So at that point, they have two options. They can, you know, gather additional evidence or find her removable on that basis, or they can exercise their prosecutorial discretion, which they did, and they issued her, in both of these cases we see the alien going from the 235 proceedings to 240, traditional proceedings before an IJ, when the notice to appear is issued. In this case, unlike the other, there was no need to file a second warrant because the custody, the mandatory custody, didn't change. She was simply released on her own recognizance. In the first case, we saw a warrant being filed because she was being held previously, as required by law, under 235. And after she was put into 240 proceedings, she's now being held under INA 236, which is noted on that arrest warrant in the first case. And that's plainly noted on that document. And that was the reason why, because the underlying legal rationale for detaining you changed from not needing the warrant to needing the warrant. Here, we don't have to go through that step because she was simply released. She was served a notice. Kagan. But substantively, I gather that your contention is that if they saw her going on a raft, which maybe one can infer from 213, that that, without, even if, as she says, she was not asked her name, place of birth, or the country of citizenship because that fact has been assumed throughout this case, that that's true, then they had probable cause to arrest her. Is that your bottom line? Yes. They have absolutely any cause to arrest her. And under 235, she has an absolute right to answer those charges, which she had the opportunity two days later. But your position is that even if they made no attempt to ascertain who she was or whether she was an alien or where she was born or what her country of citizenship is, just by seeing her come across the Rio Grande in a raft, they had probable cause to arrest her? Yeah. Absolutely, Your Honor. I think that would be, that would constitute, may arrest any alien in the U.S. If the officer has reason to believe that the alien is in the U.S. in violation of any such law, it's reasonable to believe that someone who paddles across the Rio Grande, rather than going to the border station that's, you know, a number of feet, maybe a mile away, you know, that that person is entering the country seeking to avoid inspection and entering illegally. Plus, here the I-213 does detail, as Judge Fineman pointed out, what that process was. The officer says, here's how I interdicted this individual, the raft. Twenty-five minutes later, I ascertained that the alien, this petitioner, was in the country illegally, and therefore I arrested this person and took them into custody. That's the problem. She says he didn't ascertain anything when he interacted with her because he didn't ask her anything. So at that point, he has no more information than he did before, according to her. That's his bald, unsworn, that's the petitioner's bald, unsworn accusation in the declaration, which is controverted by the I-213, which is entitled to a presumption of liability. Why are you admitting that her declaration controverts the part of the I-213 that refers to the raft? All the declaration says is, I was not asked my name, my place of birth, or my citizenship. It doesn't say, I was not asked how I got here. So shouldn't your argument be that there is no contradiction between the declaration and the part of the I-213 that refers to the raft? Absolutely, Your Honor. Even if all those facts were taken as true, then still absolutely the cause under INA 287 to apprehend and arrest this alien, regardless of whether you believe the facts in the declaration, as Judge Fineman suggested, or in conjunction and in accord with the facts in the I-213. Is somebody who's arrested subject to a search incident to an arrest? Yes, it would be. And then wouldn't the search incident to an arrest have yielded the Honduran identification documents? Absolutely, Your Honor. And wouldn't those documents establish that the petitioner was an alien from Honduras? Absolutely. And that would be an independent source of ascertaining her alienage. And that warrantless search of her person is plainly authorized in INA 287C. It's a power to conduct a search without warrant of the person and of the personal effects. Here we have the personal effects in possession of any person seeking admission to the United States. And under 235, any alien that's subject to expedited removal, clearly here she is, is deemed a person that's an applicant for admission under 235. That's at 235A1. So there's no problem with the apprehension, the search, the detention, and the ultimate decision here to release her. Okay. Thank you. Thank you, Your Honors. You have a minute for rebuttal. Thank you. Your Honor, the issue of the documents was not relied upon by the BIA to make its finding. It based its finding on the I-213 alone. It ultimately disregarded it. The BIA's respondent admitted in the answering brief that the documents were not relied upon by the BIA in reaching its findings. So let's say you win here. It gets remanded. The BIA considers the documents, and then we get the same result. Not necessarily. She could make other arguments, and she did make other arguments in her brief of why those documents were not admissible at the hearing. She didn't make them to the judge, and she concedes that, that there were arguments that were made. Are they fake documents? Excuse me? Are they fake? Not that I'm aware of. So the immigration officer or the asylum officer found she had a credible fear? Well, Your Honor, the I-213 does allege that she was given a credible fear interview, but there is no evidence here at all of that. Unlike the other case, there's no I-87. In both of these cases, though, rather than filing any application for relief, you opted? There were no applications filed. You asked for an entry of an order of removal, essentially is what you did. Both of these petitioners believed that their motions to suppress were denied wrongfully, and they were going to appeal that decision. If you had asked for relief, filed an application for relief, could you have raised the suppression issue in a subsequent appeal? Well, Your Honor, there is a regulation. It's 1240.11e that says that if the alienage allegation in a notice to peers is not admitted, that the information in a defensive asylum application can't be relied upon by DHS to prove alienage at the hearing. But once it reached the point where she was – if a person was testifying in support of the application, I think at that point, the immigration judge would have evidence that was attenuated from the arrest. It would be independent evidence. She would have admitted her alienage in an effort to apply for relief. But with the form itself, I'm not aware of that. But here she did, in fact, admit her alienage at the interview at the patrol station,  She did. She admitted it after she had been detained in harsh conditions and humiliating conditions. She was 18 years old. She was six months pregnant. This information was omitted from the I-213 so that the reader was deprived of all the information, the totality of the circumstances. Well, who's the reader of the 213? I mean, are you maintaining that the 213 was an illegally filled-out 213? Well, I think that if a Border Patrol agent places inaccurate information that that I-213 is inadmissible as evidence at the removal hearing, and the – Well, I mean, she claims it appears to be in good health. It isn't inconsistent with being six months pregnant. I'm sorry, Your Honor. She claims it appears to be in good health. It's not inconsistent with being six months pregnant. No, but holding an 18-year-old woman who was six months pregnant in a frigid room, not giving her any relief from the temperatures and giving her frozen meat to eat, I think does affect her health status. Okay. Thank you very much. Thank you. The case is submitted at this time. And thank you, Counsel, very much. I hope this worked out okay for the government lawyer. Oh, absolutely, Your Honor. Thank you for allowing me to appear via BTC. It's a great honor. Okay. Thank you. Thank you, Mr. Chairman. I'm going to take that as a yes.        Aye.
judges: Paez, Berzon, Feinerman